UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                  )
UNITED STATES OF AMERICA,          )
                                  )
                  Plaintiff,       )
                                  )               CIVIL ACTION
            v.                     )               NO. 15-11906-WGY
                                  )
ALL FUNDS ON DEPOSIT IN LEE        )
MUNDER WEALTH PLANNING RESOURCE    )
ACCOUNT NUMBER ***-**1080, HELD IN )
THE NAME OF BARRY J. CADDEN        )
IRREVOCABLE TRUST, UP TO THE       )
AMOUNT OF $1,482,200.26 AS OF      )
DECEMBER 17, 2014, AND ALL INTEREST)
ACCURED THEREAFTER, ET AL.,[1]     )
                                  )
                  Defendants.      )
_____ )

**MEMORANDUM & ORDER**

YOUNG, D.J.                                        January 22, 2016

## I.   INTRODUCTION

     The Government filed its original Complaint in this in rem

action in May 2015.  See Verified Compl. Forfeiture In Rem, ECF

No. 1.  It filed its First Amended Complaint the next month.

See First Am. Verified Compl. Forfeiture In Rem, ECF No. 9.

Currently before the Court are two motions.  One is a motion to

_____

     [1] The full caption of this case, which runs four and one-
half pages, is set forth in the Government's First Amended
Complaint, see First Am. Compl. Forfeiture In Rem, ECF No. 9,
and is incorporated here by reference.

dismiss the Government's First Amended Complaint,[2] filed by the

Conigliaro Claimants,[3] regarding certain of the properties in

this <u>in rem</u> action (collectively, the "Defendant Conigliaro

Property").[4]   <u>See</u> Claimants' Mot. Dismiss First Am. Verified

Compl. Forfeiture <u>In Rem</u> ("Mot. Dismiss First Am. Compl."), ECF

No. 39.   The other is the Government's motion for leave to file

---

[2] Several claimants filed answers to the Government's First
Amended Complaint regarding other properties, <u>see, e.g.</u>, Answer
Claimant E.R. Cadden and Lisa Cadden, as Next Friend of E.R.
Cadden, to Am. Verified Compl. Forfeiture <u>In Rem</u>, ECF No. 59,
but they are not discussed in this memorandum and order.

[3] Per their motion to dismiss, this group includes "Carla R.
Conigliaro, Douglas A. Conigliaro, A. L. Conigliaro, W. D.
Conigliaro, C. D. Conigliaro, Barbara Ann Gulino, as next friend
of D. A. Conigliaro and P. A. Conigliaro, Medical Sales
Management, Inc., and Wilchal, Inc."  Claimants' Mot. Dismiss
First Am. Verified Compl. Forfeiture <u>In Rem</u>, ECF No. 39.

[4] In the interest of brevity, the Court references a
particular account only when it is relevant: for the bulk of the
Court's analysis, the Court will refer to the Defendant
Conigliaro Property as encompassing all the accounts to which
both the Government and the Conigliaro Claimants assert a claim.
<u>See</u> Reply Brief Supp. United States' Mot. Leave File Second Am.
Compl. Forfeiture <u>In Rem</u> ("United States' Reply"), ECF No. 89
(referencing "the 21 defendant properties identified in
paragraphs 2(d)-(x) of the [Second Amended Complaint as] the
'Defendant Conigliaro Property'"); Claimants' Mem. Supp. Opp'n
United States' Mot. Leave Amend First Am. Compl. Forfeiture <u>In
Rem</u> ("Claimants' Mem."), ECF No. 85.  The legal analysis, except
where otherwise indicated, is the same for all of the various
accounts constituting the Defendant Conigliaro Property.

its Second Amended Complaint.  <u>See</u> United States' Mot. Leave

File Second Am. Compl. Forfeiture <u>In Rem</u>, ECF No.[5]

The issues have been extensively briefed.  <u>See</u> Claimants'

Mem. Law. Supp. Mot. Dismiss First Am. Verified Compl.

Forfeiture <u>In Rem</u>, ECF No. 40; United States' Opp'n Conigliaro

Claimants' Mot. Dismiss Compl. in Part, ECF No. 57; Claimants'

Reply Mem. Law. Further Supp. Mot. Dismiss First Am. Verified

Compl. Forfeiture <u>In Rem</u>, ECF No. 69; United States' Sur-Reply

Br. Opp'n Conigliaro Claimants' Mot. Dismiss Compl. in Part, ECF

No. 80; Mem. Supp. United States' Mot. Leave File Second Am.

Compl. Forfeiture <u>In Rem</u>, ECF No. 83; Claimants' Mem. Supp.

Opp'n United States' Mot. Leave Amend First Am. Compl.

Forfeiture <u>In Rem</u> ("Claimants' Mem."), ECF No. 85; Reply Brief

Supp. United States' Mot. Leave File Second Am. Compl.

Forfeiture <u>In Rem</u> ("United States' Reply"), ECF No. 89.  The

Court held hearings[6] on both motions, <u>see</u> Elec. Clerk's Notes

October 23, 2015, ECF No. 81; Elec. Clerk's Notes Dec. 18, 2015,

---

[5] The Government filed a proposed Second Amended Complaint
along with its motion.  <u>See</u> Second Am. Verified Compl.
Forfeiture <u>In Rem</u> ("Second Am. Compl."), ECF No. 84.

[6] At a hearing on the Conigliaro Claimants' motion to
dismiss the First Amended Complaint, the Court allowed the
Government thirty days to file a formal motion for leave to file
its Second Amended Complaint.  <u>See</u> Elec. Clerk's Notes, ECF No.
81.

ECF No. 90, and took the matters under advisement.  It now decides them.

## II.   ANALYSIS

The Conigliaro Claimants oppose the Government's motion for leave to file its Second Amended Complaint because, they argue, such amendment would be futile.  See Claimants' Mem. 2-3.  While the action is one in rem, the Conigliaro Claimants' motion to dismiss is formally brought under Federal Rule of Civil Procedure 12(b).  See Supp. R. 8(b)(i) ("A claimant who establishes standing to contest forfeiture may move to dismiss the action under Rule 12(b).").  "There is no practical difference . . . between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim."  Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996).

The Second Amended Complaint contains more detailed factual allegations than does the First Amended Complaint.  Since the Court holds that even the Second Amended Complaint is insufficiently detailed under the relevant pleading standard, there is no need to analyze whether the First Amended Complaint would survive a motion to dismiss.

### A.   Standard of Review

The Conigliaro Claimants argue, in effect, that the Second Amended Complaint would fail as matter of law, thus the Court

[4]

ought deny the Government's motion.  The Court proceeds, then, by determining if "the complaint, as amended, would fail to state a claim upon which relief could be granted."  Id. (internal citations omitted).

This is not a typical motion to dismiss analysis, however, because civil forfeiture is at issue, and thus, the parties agree, Supplemental Rule G(2)(f) provides the relevant pleading standard.  See United States' Reply 5; Claimants' Mem. 3; accord, e.g., United States v. $134,972.34 Seized from FNB Bank, Account No.-5351, 94 F. Supp. 3d 1224, 1229 (N.D. Ala. 2015) (applying "the heightened pleading standard of Supplemental Rule G(2)(f)" to evaluate civil asset forfeiture claim); United States v. One Gulfstream G-V Jet Aircraft, 941 F. Supp. 2d 1, 13 (D.D.C. 2013) (applying Supplemental Rule G(2)(f) to a civil forfeiture action) (internal citation omitted).

Supplemental Rule G(2)(f) requires that complaints for forfeiture actions in rem "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  Supp. R. G(2)(f).  At trial, the Government's burden is "to establish, by a preponderance of the evidence, that the property is subject to forfeiture[.]"  18 U.S.C. § 983(c)(1).

The Court must take the Government's factual allegations as true and "liberally construe[]" the Second Amended Complaint in

its favor.[7]  See One Gulfstream G-V Jet Aircraft, 941 F. Supp. 2d at 14 (stating that "[a] claimant in an in rem proceeding may move to dismiss in the same form provided by Rule 12(b)" and that the same standards apply) (internal citations omitted).

### B.   Failure to Satisfy the Heightened Pleading Standards of the Supplemental Rules

The Conigliaro Claimants argue that the Court ought deny the Government's motion for leave to file its Second Amended Complaint because it fails to meet the heightened pleading standards applicable to civil forfeiture cases.  See Claimants' Mem. 10-17.[8]

The Government's Second Amended Complaint alleges that the Defendant Conigliaro Property "constitute[s] or [is] derived from proceeds traceable to the transfer or concealment of assets in connection with a [bankruptcy] case . . . in violation of 18 U.S.C. § 152(7)[,]" and is thus subject to forfeiture.  Second

---

[7] While the statute admonishes that "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property[,]" 18 U.S.C. § 983(a)(3)(D), the Conigliaro Claimants do not argue that the Government's evidence is insufficient, but rather that its allegations are.

[8] The Claimants make at least two other arguments in support of their motion to dismiss.  See Claimants' Mem. 5-11, 18-19. Since the Court rules that the ground stated above is dispositive, however, it declines to address the alternative grounds the Claimants proffer.

Am. Verified Compl. Forfeiture <u>In Rem</u> ("Second Am. Compl."), Ex.
A, Second Am. Compl. Aff. Brian J. Evans ("Evans Aff.") ¶ 8, ECF
No. 84-1.[9]  A conclusory allegation is not enough, of course, so
the Court examines the Government's Second Amended Complaint to
determine if it contains "sufficiently detailed facts to support
a reasonable belief that the government will be able to meet its
burden of proof at trial."  Supp. R. G(2)(f).

### 1.   The Government's Allegations

Carla Conigliaro was an insider of the New England
Compounding Company ("NECC"): a majority shareholder and a
member of the board of directors (although not an employee).
<u>See</u> Evans Aff. ¶¶ 12-14.  "[Barry J.] Cadden and certain other
defendants named in the Indictment knowingly ran NECC as a
criminal enterprise from at least 2006 until NECC ceased
operations in October 2012."  <u>Id.</u> ¶ 59.

The Government does not specify Carla Conigliaro's
involvement in the alleged "criminal enterprise," other than by
pointing, in Brian Evans's affidavit, to an indictment.  That

---

[9] The Government also alleges that portions of the Defendant
Conigliaro Property qualify as "properties involved in money
laundering[.]"  Evans Aff. ¶ 8.  The Conigliaro Claimants argue
that the Government's money laundering allegation is premised on
bankruptcy fraud.  <u>See</u> Claimants' Mem. Law. Further Supp. Mot.
Dismiss First Am. Compl. Forfeiture <u>In Rem</u> 20, ECF No. 40.  The
Government does not appear to dispute this point.  <u>See generally</u>
United States' Sur-Reply Br. Opp'n Conigliaro Claimants' Mot.
Dismiss Compl. in Part, ECF No. 80; United States' Reply.

indictment is attached as an exhibit to the Government's Second Amended Complaint.  See Second Am. Compl., Ex. 1 ("Indictment"), ECF No. 84-2.  That indictment, however, does not name Carla Conigliaro in its many charges against those running NECC, which include: racketeering, id. ¶¶ 33-71; conspiracy, id. ¶¶ 72-108; mail fraud, id. ¶¶ 109-113; and introduction of adulterated (and, separately, misbranded) drugs into interstate commerce, id. ¶¶ 114-119.  Instead, it charges her with criminal contempt for her actions beginning in February 2013 -- a year after the distributions at issue in this case.  See id. ¶¶ 120-121.[10]

Specifically, the distributions at issue here are the $17,888,750 Carla Conigliaro received from NECC in twice-monthly payments.  These were denominated "'distributions,' 'tax distributions,' or 'shareholder distributions[.]'"  Evans Aff. ¶ 60.  She received these payments between March 2, 2010, and October 1, 2012.  Id.  NECC filed for bankruptcy on December 21, 2012.  Id. ¶ 34.  These payments, along with two other

---

[10] The indictment also charges Carla Conigliaro with making structured cash withdrawals between September 2010 and January 2013 to evade currency reporting requirements, id. ¶¶ 129-131, and illegally structuring transactions to avoid reporting requirements between February 2013 and March 2014, id. ¶¶ 132-137.  The money involved in these transactions is, the indictment alleges, subject to forfeiture -- in that action, not the instant one.  See id. ¶¶ 144-145.

payments,[11] the Government argues, are avoidable transfers.[12]   Id.
¶ 63.  Specifically, the Government asserts that these transfers
from NECC to Carla Conigliaro are avoidable under two
independent legal bases.  See id. ¶ 63 (stating that the
payments to Carla Conigliaro "constituted avoidable transfers
under [two] statutory provisions described [earlier in the
affidavit]").  The Court will discuss them in turn.

**2.    NECC's Transfers to Carla Conigliaro as
        Preferential Transfers**

The Government's first claim for forfeitability is based on
Section 547 of Chapter 11 of the United States Code.  See Evans
Aff. ¶ 9 (citing 11 U.S.C. § 547(b)); United States' Reply 15.
Specifically, the Government invokes Section 547(b), which
provides that a bankruptcy trustee

> may avoid any transfer of an interest of the debtor
> [here, NECC] in property--
>
> (1) to or for the benefit of a creditor [here, Carla
> Conigliaro];

---

[11] These two additional payments, about which the Second
Amended Complaint alleged distinct facts, are discussed infra
note 13 and section II-B.

[12] For the Government to succeed on this theory, it must
show that the transfers from NECC to Carla Conigliaro were void
or voidable; it cannot merely rely on the alleged criminal
conspiracy of those running NECC, when it does not allege that
Carla Conigliaro was part of that conspiracy.  See infra section
II(B)(3); cf. Raeed N. Tayeh, Implicated But Not Charged:
Improving Due Process for Unindicted Co-Conspirators, 47 Akron
L. Rev. 551 (2014).

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made--

> (A) on or within 90 days before the date of the filing of the petition; or

> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if--

> (A) the case were a case under chapter 7 of this title;

> (B) the transfer had not been made; and

> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

The Conigliaro Claimants point out that the Second Amended Complaint fails to plead facts regarding several essential elements of Section 547(b). Specifically, they note that there is no allegation that Carla Conigliaro was a creditor of NECC, as required by subsection (1); there is no allegation regarding any antecedent debt owed to her, as required by subsection (2); and there is no allegation that NECC was insolvent at any point in the time period during which Carla Conigliaro was receiving these transfers, as required by subsection (3). Claimants' Mem.

12.  The Government responds that "NECC owed Ms. Conigliaro a debt because she was a shareholder[,]" and asks, rhetorically, "if NECC was not paying Ms. Conigliaro as an insider-creditor, why was it paying her [a]t all?"  United States' Reply 15 n.3. The Government does not appear to offer any argument regarding the Second Amended Complaint's silence about NECC's insolvency when it made any of the challenged payments to Carla Conigliaro.[13]

The Government's Second Amended Complaint leaves too much to the imagination.  Factual allegations regarding many of the required elements under Section 547(b) are missing, thus the Court holds as matter of law that, with respect to the Government's claim that the Conigliaro Funds are forfeitable because they were the product of avoidable transfers, the Second Amended Complaint fails to allege "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial."  Supp. R. G(2)(f).[14]

---

[13] Thus the allegation regarding the payment made by NECC to American Express, Evans Aff. ¶ 60, must fail, too, because there is no allegation that NECC was insolvent at the time it made such payment.

[14] The Court notes that, since NECC filed for bankruptcy on December 21, 2012, Evans Aff. ¶ 34, section 547(b) only applies to the last 20 of the 63 challenged transfers from NECC to Carla Conigliaro.  See 11 U.S.C. § 547(b)(2)(4) (covering transfers made in the year preceding bankruptcy); Second Am. Compl., Ex. 4, NECC Distribution Payments Carla Conigliaro, ECF No. 84-5 (twenty transfers occurring after December 21, 2011).

### 3.   NECC's Transfers to Carla Conigliaro as Fraudulent Transfers

The Government's second theory relies on Section 548 of the Bankruptcy Code.  The Government alleges that the payments from NECC to Carla Conigliaro were fraudulent transfers, meaning they were made by NECC "with intent to hinder, delay, or defraud any person or entity to which [NECC] was indebted or became indebted on or after the date of the transfer."  Evans Aff. ¶ 10 (citing 11 U.S.C. § 548(a)(1)(A)).

Section 548 has two provisions that might apply in the instant case to render the transfers fraudulent: subsection (a)(1)(A) and subsection (a)(1)(B).  Subsection (a)(1)(A) allows trustees to avoid a transfer the debtor (here, NECC) incurred where the debtor "made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted[.]"  11 U.S.C. § 548 (a)(1)(A) (emphasis supplied).  Subsection (a)(1)(A) targets transfers that defraud current or future creditors.  It is meant to protect the Bankruptcy Code; it is not an all-purpose clawback mechanism akin to a statutory ban on unjust enrichment.

The Conigliaro Claimants argue that "the Government has failed to allege any particular factual support" for forfeiting the Defendant Conigliaro property under subsection (a).

[12]

Claimants' Mem. 12.  They also point out that, again, the Government's Second Amended Complaint omits a required element: that NECC's transfers were made to defraud some other creditor. See id. at 12-13.  The Government rebuts by asserting that its allegations are sufficient, but seems to improperly equate NECC's allegedly criminal conduct that led to a viral meningitis outbreak with an intent to defraud some creditors in favor of others.  See United States' Reply 15 ("The [G]overnment has alleged the dates and amounts of the transfers.  It has alleged that the transfers were made while NECC was being run as a criminal operation which ended up selling contaminated drugs that killed and maimed hundreds of people.").[15]  As such, the Second Amended Complaint has not pled sufficiently detailed facts concerning the Defendant Conigliaro Property and NECC's transfer of it being fraudulent under Section 548(a)(1)(A) to satisfy the heightened pleading standards.

---

[15]  The Second Amended Complaint incorporates the Indictment against many insiders at NECC, see id. at ¶ 59, but the indictment alleges nothing with respect to these payments being fraudulent as against creditors of NECC.

NECC's tort liability from the meningitis outbreak is certainly significant.  All of the transfers here, however (save one), occurred before any events alleged that would have provided notice to NECC of its potential future liability.  Per the Second Amended Complaint, the first relevant event occurred on September 24, 2012, id. at ¶ 26, which happened after all of the transfers to Carla Conigliaro at issue, except for the final one, for $275,000.  See NECC Distribution Payments to Carla Conigliaro.  The Government has not alleged that there was anything different about this final transfer payment.

[13]

Section 548 provides the Government with one more provision, however.  Section 548(a)(1)(B) allows the avoidance of transfers when the recipient (here, Carla Conigliaro) "received less than a reasonably equivalent value in exchange for such transfer," 11 U.S.C. § 548(a)(1)(B)(i), and the transfer is "to or for the benefit of an insider . . . under an employment contract and not in the ordinary course of business[,]" id. § 548(a)(1)(B)(ii)(IV).  But this provision, requiring the transfer to be "under an employment contract[,]" plainly does not cover shareholder profit distribution payments, which constitute the lion's share of the Defendant Conigliaro Property, see Evans Aff. ¶¶ 60-63 (indicating that $17,888,750 of the total $17,975,019.96 of the Defendant Conigliaro Property is from NECC "Distribution Payments" to Carla Conigliaro).

The Government's allegations regarding a particular subset of the Defendant Conigliaro Property, however, are different. The Government alleges that the $67,845.30 in transfers Carla Conigliaro received between December 28, 2011, and November 30, 2012, were classified as payroll, but that she was not an employee at this time.  Evans Aff. ¶ 62.  These particular allegations, unlike those discussed above, contain "sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2)(f).

**C.   Dismissal with or without Prejudice**

The Conigliaro Claimants ask for dismissal with prejudice.
See Mot. Dismiss First Am. Compl. 1; Claimants' Mem. 20.  The
Court has discretion to dismiss the complaint with prejudice or
to give the Government leave to seek to amend yet again.  See,
e.g., U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48
(1st Cir. 2009).  The Second Amended Complaint is the
Government's third attempt at stating its complaint, and again
it fails to present sufficiently particularized allegations.[16]
Thus, except as to the allegations against the $67,845.30 of
allegedly spurious "payroll" expenditures, the Court grants
dismissal with prejudice.  See id. (affirming the denial of
leave to amend where the plaintiff's second amended complaint
was insufficient).

**III. CONCLUSION**

The Court has reviewed the Government's Second Amended
Complaint, and, with the exception of $67,845.30 of the
$17,975,019.96 of the Defendant Conigliaro Property, holds that
it does not "state sufficiently detailed facts to support a

---

[16] Even if the Government lacked the evidence necessary to
support such particularized allegations, it ought have made them
nonetheless and indicated that the relevant evidentiary support
was forthcoming.  See Fed. R. Civ. P. 11(b)(3) (parties may
include factual allegations that lack adequate evidentiary
support if those allegations are "specifically so identified . .
. and will likely have evidentiary support after a reasonable
opportunity for further investigation or discovery.").

reasonable belief that the government will be able to meet its burden of proof at trial[.]"  Supp. Rule Civil Procedure G(2)(f).  It thus **GRANTS** the Conigliaro Claimants' motion to dismiss, ECF No. 39, and **DENIES** as futile the Government's motion for leave to file its Second Amended Complaint, ECF No. 82.  Because equitable restraining orders have entered as to the Defendant Conigliaro Property, judgment shall not enter until two weeks from today's date should the Government wish to seek a stay from the Court of Appeals.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE